## STATE OF NORTH DAKOTA, Respondent, v. HERBERT MARTY, Appellant.

### (203 N. W. 679.)

**Criminal law — change of venue, jurisdiction acquired, though papers not transmitted.**

1. Where the defendant in a criminal action files an application for a change of place of trial (Comp. Laws, 1913, § 10,756) and an affidavit of prejudice against the judge of the district court in which the action is then pending (Comp. Laws, 1913, § 10,766), and the court to which such applications are presented grants the same, and causes an entry to be made in the minutes of the court to the effect that the applications are granted and the place of trial changed to the district court of another named county, and, subsequently, makes, signs and files a written order in the cause changing the place of trial from the county in which it is then pending to the district court of the county named in the notation made in the minutes of the court, the court to which the action is removed becomes and is vested with jurisdiction, without regard

---

Note.— (2) Effect of testimony by witnesses whose names not indorsed on information, see 14 R. C. L. 169.

(5) Evidence of other acts of intercourse with prosecutrix, see 22 R. C. L. 1205.

(6) Necessity of request for instructions, see 14 R. C. L. 797; 3 R. C. L. Supp. 287; 4 R. C. L. Supp. 920; 5 R. C. L. Supp. 778.

to whether the papers in the case have been transmitted to and filed in the latter court.

**Criminal law — witnesses' names not endorsed on information — may be called where state's attorney did not know they would be necessary.**

2. Section 10,631, Comp. Laws, 1913, which provides that the state's attorney or person appointed to prosecute shall indorse or otherwise exhibit on the criminal information in the case "the names of all witnesses for the prosecution known to him to be such at the time of the filing of the same, but other witnesses may testify, in behalf of the prosecution on the trial of said action, the same as if their names had been indorsed upon the information," does not inhibit witnesses, whose names are not indorsed on the information from being called in behalf of the prosecution, where the state's attorney did not know at the time of the filing of the information that the persons so called would be necessary witnesses for the prosecution on the trial of the case.

**Criminal law — admission of guilt by accused held admissible.**

3. For reasons stated in the opinion it is *held* that the trial court did not err in admitting the testimony of the sheriff relating to certain admissions of guilt, made by the defendant.

**Criminal law — letters of prosecutrix held admissible.**

4. For reasons stated in the opinion it is *held* that the trial court did not err in admitting in evidence certain letters written by the prosecutrix.

**Criminal law — rape — refusing to require state to elect occasion when intercourse took place held not error.**

5. In a prosecution for statutory rape, it was not error to allow the State to introduce evidence of sexual intercourse had on different days, and to refuse to require it to elect the occasion on which it would rely till the close of its case.

**Criminal law — instructions — failure to give in absence of request held not error.**

6. Mere failure to instruct the jury on a particular phase of the evidence cannot be urged as prejudicial error in the absence of a request so to do.

**Conviction — evidence held sufficient to sustain conviction of rape in first degree.**

7. For reasons stated in the opinion it is *held* that the evidence is sufficient to sustain a verdict of guilty of rape in the first degree.

Opinion filed April 7, 1925.

Criminal Law 16 C. J. § 329 p. 217 n. 44; § 331 p. 218 n. 63; § 1134 p. 588 n. 8; § 1269 p. 640 n. 3; § 1468 p. 717 n. 39; § 2026 p. 795 n. 38; § 2027 p. 796 n. 55; § 2029 p. 798 n. 73; § 2418 p. 1002 n. 12; § 2500 p. 1058 n. 37. Enter 20 C. J. p. 1266 n. 38. Indictments and Informations, 31 C. J. § 357 p. 789 n. 82. Rape 33 Cyc. p. 1483 n. 93, 95; p. 1486 n. 12.

Appeal from the District Court of Morton County, *Berry, J.*

Herbert Marty was convicted of rape in the first degree and appeals. Affirmed.

*Simpson & Mackoff,* for appellant.

The order for the change of venue divests the court in which the suit is instituted of its jurisdiction over the cause, and in contemplation of law operates to transfer the same to the Court to which the change is taken. The latter court, although vested with the jurisdiction, cannot exercise it so as to adjudicate upon the rights of the parties litigant until such a transcript of the record and proceedings is filed, as is required by the statute. Stringer v. Jacobs, 50 Am. Dec. 221.

*Geo. F. Shafer,* Attorney General, and *J. P. Cain,* State's Attorney, and *L. H. Connolly,* for respondent.

To effect a change of venue from one county or district to another, an order of removal is required by the statutes and is necessary. Such an order is sufficient when it substantially conforms to the requirements of the statute. The designation of the court to which the transfer is made is sufficient where it can be rendered certain by reference to the statute authorizing the change. . . . The order will not be valid by mere technical error or by delay in filing. 16 C. J. 217, ¶ 329.

A confession made to the officers where defendant was told that it would be better to tell the truth; that it would be best for defendant to tell the truth, was not an involuntary confession and was admissible. State v. Kerns, 198 N. W. 698.

The mere fact that the defendant was under arrest, or was in the charge of armed police officers when he made his confession, or was handcuffed, or tied, or in prison, will not make a confession involuntary. Underhill, Crim. Ev. ¶ 221.

That the sheriff stated to the accused before a confession was made by him, the best thing you can do is to tell the truth and you might get out of it to-day, was not such an inducement to render the confession incompetent. State v. Allison, 124 N. W. 747.

In a prosecution for carnally knowing a female under the age of consent, evidence of prior acts and other acts including subsequent acts in corroboration are admissible in evidence. Underhill, Crim. Ev. ¶ 156.

It has been repeatedly held that upon a trial of a charge of having

committed any of the crimes known as sexual offenses, evidence of prior acts of the same character are admissible, although such prior act is in itself a crime. Wharton, Crim. Ev. ¶ 42.

CHRISTIANSON, Ch. J. The defendant was convicted of the crime of rape in the first degree in the district court of Morton county, upon a change of venue from Stark county and sentenced to three and one-half years imprisonment in the State's Penitentiary. Judgment was pronounced pursuant to the verdict and defendant has appealed from the judgment and from the order denying a new trial.

The errors urged by the appellant for a reversal are as follows:

1. That the district court of Morton county was without jurisdiction to hear and determine the action for the reason that the clerk of the district court of Stark county had failed to comply with the statute in the entry of the order for a change of venue and in transmitting the files in the case to the clerk of the district court of Morton county.

2. That the court erred in permitting the indorsement of the names of two witnesses for the prosecution upon the information at the time of the trial.

3. That the court erred in permitting the sheriff of Stark County to testify to a certain statement made to him by the defendant.

4. That the court erred in admitting in evidence certain letters written by the prosecuting witness.

5. That the court erred in permitting the prosecution to introduce evidence of other acts of sexual intercourse between defendant and the prosecuting witness besides the one which formed the basis of the prosecution.

6. That the court erred in its instructions to the jury.

7. That the verdict and the judgment based thereon should be set aside on the ground that the testimony of the prosecutrix is so vague and unsatisfactory as not to be entitled to belief.

These propositions will be considered in the order stated.

(1) The record in this case shows that the information was filed March 7th, 1922; that on March 8th, 1922, the defendant was arraigned and entered a plea of not guilty; that the defendant was thereupon admitted to bail in the sum of $2000; that the case came on for trial at the February 1923 term of said court and that the defendant

file⁻ an affidavit for a change of place of trial (Comp. Laws 1913, §
10, 56) and of prejudice against the judge of the district court in
wł h the action was pending. Comp. Laws 1913, § 10,766. An
en ; was made in the minutes of the court as follows: "Affidavit
gra ted and place of trial changed from Stark County to Morton
co ity at Mandan, North Dakota, next term." Thereafter the trial
ju 'e made a written order which, after reciting the filing of the in-
fo ration, the plea of not guilty and the filing of the affidavit for
ch ge of place of trial and of trial judge, stated:

It is hereby ordered, adjudged and decreed that said case be trans-
fer ed to the county of Morton, State of North Dakota, and that a
bor l heretofore filed by the defendant be continued in full force and
eff t, that the clerk of the court is directed to furnish proper certified
records and transfer the same to the clerk of the district court of Mor-
ton county, and the defendant is ordered to be and appear at the next
district court term in and for the county of Morton for trial in said
action." This order was duly signed by the judge of the district court
and filed in the office of the clerk of the district of Stark county on
May 7th, 1923. Later all the papers were transmitted by the clerk of
the district court of Stark county to the clerk of the district court of
Morton county and were filed in the latter court on October 24th, 1923.
The appellant contends that this procedure does not conform to § 10,-
759, Comp. Laws 1913, which reads as follows:

"The order of removal must be entered upon the minutes, and the
clerk must thereupon make out and transmit to the court to which the
action is removed, a certified copy of the order of removal and of the
records, pleadings and proceedings in the action, including the under-
takings for the appearance of the defendant and of the witnesses."

The specific contentions are that under this statute:—(1) the order
of removal must be *recorded,* that is, entered at length, in the minutes
of the court; and, (2) that the clerk of the district court must *immedi-
ately* after the order of removal is made and entered prepare and trans-
mit the record to the court to which the action is removed. In other
words, appellant contends that when the statute says "the order of re-
moval must be *entered* upon the minutes," it means that the order of
removal must be recorded, that is, entered at length, in the minutes of
the court, and that when it says "the clerk must *thereupon* make out

and transmit" etc., it means that the clerk must perform these acts immediately.

It is true, in certain cases the word "entered" is deemed synonymous with recorded. But it does not have that meaning in all cases. In some cases to enter means to file a certain document, or to make notation of a certain event. See, Funk & Wagnalls's New Standard Dictionary. The meaning to be attributed to the word in any given case must be gathered from the context, and from the association with other words. Lewis's Sutherland, Stat. Constr. 2d ed. § 414. The word entered is used here as regards an entry to be made in the minutes of the court. The minutes of the court are not the records in which orders or judgments are recorded. The entries there are the memoranda of what takes place in court, made by the authority of the court. 2 Bouvier's Law Dict. Rawle's 3d Rev. p. 2220; 5 Words & Phrases, p. 4528. However, in this case, there seems to have been full compliance with the statute, even though the word is given the meaning contended for by the appellant. 16 C. J. p. 217. The minutes of the court, in this case, after showing the filing of the application for a change of venue, state: "Affidavit granted and place of trial changed from Stark county to Morton county, at Mandan, North Dakota, next term." Here is a sufficient order of removal. The fact that the trial court later, in conformity with the established practice, prepared, signed and filed an order to the same effect containing somewhat more extended recitals certainly did not destroy the entry on the minutes, or operate to the prejudice of the appellant.

In our opinion, the district court of Morton county did not lose jurisdiction, because the clerk of the district court of Stark county failed to transcribe and transmit the record immediately after the order of removal was made. Section 10,759, supra, was adopted from California, and was construed by the Supreme Court of California in People v. Suesser, 142 Cal. 354, 75 Pac. 1093. In that case a criminal action was commenced in the superior court of Monterey county, and a change of venue therein ordered to the Superior Court of Santa Clara county. The procedure prescribed by the statute was not followed. "A certified copy of the order of removal was forwarded to the superior court of Santa Clara county, and there filed; but, instead of certified copies of the other papers in the cause, all of the original pleadings,

papers and files were forwarded, and no certified copies thereof were retained in Monterey county." 142 Cal. 357, 75 Pac. 1094. It was further claimed that the transcript did "not show that the alleged copies of the minutes of the Monterey court showing the arraignment and plea were certified to be correct copies by the clerk." The question was not raised in the trial court, but in the appellate court it was contended "that by reason of these matters the superior court of Santa Clara county never acquired jurisdiction to try the cause." In disposing of the questions so raised the California court said:

"We are of the opinion that, under the language of our statute, the superior court of Santa Clara county acquired jurisdiction of the cause by removal. The statute provides that an order must be made 'transferring the action,' and, when such an order is legally made, the court making it has no jurisdiction to proceed further in the cause, so long, at least, as that order remains unrevoked. The certified copies to be forwarded to the court to which the action has been transferred are but evidence of the order of transfer, and of the proceedings in the court, from which the transfer has been made. There is nothing in the statute which makes the furnishing of such evidence essential to the 'jurisdiction' of the court to which the transfer is made. Just as in the matter of service of a summons or a notice of appeal, it is the fact of service rather than proof thereof, that gives jurisdiction, so here it is the fact of the making of the order, rather than the proof thereof, that transfers jurisdiction. Due proof of the making of the order of transfer would doubtless be required by the court to which a transfer is made, and also by this court on appeal; but that was fully furnished, as shown by the transcript, in the method prescribed by law, viz., by the certified copy of the order transferring the action filed in the Santa Clara county court." 142 Cal. 358, 75 Pac. 1095.

See also 16 C. J. p. 218.

(2) What is said by the California court is directly applicable here. The jurisdiction,—that is the power to hear and determine,—was not affected by the delay in transcribing and transmitting the papers. And it appears that defendant was not prejudiced by such delay. He was not incarcerated at any time while the action was pending for trial, but was at liberty under bail. He did not lose the benefit of any term of court, as the record was transmitted in ample time to

permit the cause to be tried at the first jury term held in Morton county after the order of removal was entered. And in the hearing of an appeal in a criminal cause it is the duty of this court to "give judgment without regard to technical errors or defects or exceptions which do not affect the substantial rights of the parties." Comp. Laws, 1913, § 11,013.

The specification of error predicated upon the court's ruling in permitting the names of two witnesses for the prosecution to be indorsed on the information at the trial is, we think, devoid of merit. This specification rests upon the following statutory provision: "said state's attorney or person appointed to prosecute shall subscribe his name to said information and indorse or otherwise exhibit thereon the names of all witnesses for the prosecution known to him to be such at the time of the filing of the same, but other witnesses may testify, in behalf of the prosecution, on the trial of said action, the same as if their names had been indorsed upon the information." Comp. Laws, 1913, § 10,631. There is nothing to indicate that the state's attorney at the time the information was filed had any knowledge or belief that the witnesses whose names were indorsed upon the information at the trial would be necessary witnesses in the case at all. And whatever showing there was made upon this question was to the effect that he had no such knowledge or belief. By the plain language of the statute, the prosecution was not inhibited from calling the witnesses whose names were indorsed upon the information at the trial, and no error was committed in permitting such witnesses to testify. State v. Albertson, 20 N. D. 512, 128 N. W. 1122; State v. Pierce, 22 N. D. 358, 133 N. W. 991; State v. Kilmer, 31 N. D. 442, 153 N. W. 1089, Ann. Cas. 1917E, 116; State v. King, 9 S. D. 628, 70 N. W. 1046. And the testimony of these witnesses was not of such nature as to occasion any surprise; and, after the testimony had been given there was not even a suggestion that a continuance was desired to obtain the presence of witnesses on behalf of the defense to rebut such testimony.

(3) It is next contended that the trial court erred in the admission of the testimony of one Brown, the sheriff of Stark county. Brown testified that the defendant in a certain conversation admitted to him that he (defendant) had had sexual intercourse with the prose-

cuting witness. This assignment of error is supported by little or no argument in the brief and might well be deemed abandoned. In our opinion the assignment is wholly devoid of merit. The undisputed evidence shows that after the criminal complaint had been made and the warrant of arrest issued, the defendant voluntarily appeared at the office of the state's attorney of Stark county; that thereupon the state's attorney called Brown over the telephone and informed him of defendant's presence, and Brown came to the state's attorney's office. The defendant's wife was in the office at the time. The defendant requested that the sheriff and state's attorney come into another room, which they did; that at this time the defendant asked the state's attorney and the sheriff if he would be guilty of crime, ever if he had had sexual intercourse with the complaining witness, if it were shown that she had previously had intercourse with other men; that the state's attorney stated that this would make no difference, that if he (defendant) had had sexual intercourse with the prosecuting witness he would be guilty without regard to whether other men had had intercourse with her; that defendant then said that if this were true he wanted to plead guilty as he had had intercourse with her twice. There is not the slightest indication that any threats or force were used to induce the defendant to make these statements. And the only thing claimed to constitute a promise was a statement by the sheriff to the effect that "the court generally would consider a man pleading guilty,—that the sentence might be lighter." The evidence also shows that the defendant was specifically told by the state's attorney that he did not have to answer any questions and that if he wanted an attorney he could have one. The question of the admissibility of confessions was fully considered by this court in the recent case of State v. Kerns, 50 N. D. 927, 198 N. W. 698, and the rules governing the admission thereof fully stated. We are entirely satisfied that no error was committed in admitting the testimony of Brown in the case at bar.

(4) It is next contended that the trial court erred in admitting in evidence certain letters written by the prosecutrix to her Mother. This assignment also is supported by little or no argument and might well be deemed waived. The assignment is wholly unfounded. The undisputed evidence shows that when the letters in question were

written the prosecutrix was practically in defendant's custody and under his control, and that the letters were written largely, if not wholly, at the dictation of the defendant; that they were read over by him before they were mailed and that he mailed them. The letters were written after the prosecutrix had become aware that she was pregnant and had informed the defendant of this fact. Under the evidence in this case these letters were as much entitled to be admitted in evidence as though they had actually been written by the defendant himself.

(5) The criminal information in this case charged that the defendant committed the crime of rape in the first degree on or about April 15th, 1921 in the manner following, to-wit:

"That at the said time and place the said defendant, Herbert Marty, did wilfully, unlawfully, knowingly and feloniously in and upon the person of Lillian Sibley, a female under the age of eighteen years, to-wit, the age of sixteen years, not the wife of the defendant, did make an assault and did then and there carnally know and have sexual intercourse with her, the said Lillian Sibley, that at the time of said action or actions of sexual intercourse as aforesaid, the defendant was over the age of twenty-four years."

. At the commencement of the trial—before any evidence had been introduced—the defendant moved that the state be compelled to elect "the specific act of intercourse that it will rely upon in this case for a conviction." The court stated that it would not require the state to make such election at that time but that at the close of the state's case the court would be inclined to require an election.

The prosecutrix testified as follows:

The defendant is married to an older sister of the prosecutrix. In the fall of 1920 defendant's wife became ill and the prosecutrix went from her home (where she was then living with her parents) to defendant's home to assist with the housework. She remained at defendant's home from the latter part of September until November 5th, 1920. At this time the prosecutrix was between 15 and 16 years old. During the month of October she and the defendant went out to pick bullberries and upon this occasion he had sexual intercourse with her. Later the defendant had intercourse with the prosecutrix several times in the barn. These acts generally took place at times when they

had gone to the barn to milk the cows. On or about November 5th, 1920, the prosecutrix left defendant's place and went to her home, but returned to defendant's home about the middle of December of the same year, and remained there until December 28th, when she again went home. During this period defendant had intercourse with her several times. The prosecutrix again came to the defendant's home in February 1921 and remained there until about the 28th or 30th of March when she went to her own home, returning to defendant's home on April 17th and remaining there until April 23rd. She testified to various acts of sexual intercourse during these two visits. Some time in the latter part of May, 1921 the prosecutrix again went to the defendant's home and at this time she informed him that she was in a family-way and he stated to her "that he would take her to a doctor and have an abortion performed." Later he did take her to a doctor and stated to the doctor that the prosecutrix was his sister and requested the doctor to perform an abortion, which the doctor refused to do.

During the examination of the prosecutrix defendant's counsel objected to any testimony relative to any act of sexual intercourse except the one charged to have taken place on or about April 15th, 1921. These objections were overruled. At the close of the state's case defendant's counsel again moved the court "to require the state's attorney to elect a date and the act of sexual intercourse upon which they will rely for a conviction in this case." This motion was granted and the state elected April 22nd, 1921.

It is contended that the trial court erred in denying the motion to require the state to elect made before the commencement of the trial; and, also, that the trial court erred in admitting evidence of more than one act of sexual intercourse, the contention being that each act constituted a separate offense and that evidence of offenses other than the one with which defendant was charged was not admissible.

In our opinion no error was committed. It is true, when a man is put upon trial for one offense he can be convicted only of the offense with which he is charged. And hence, the only evidence which is relevant in the trial of such action is evidence relating to the offense with which he is charged, and evidence of other offenses is not admissible to raise a presumption of guilt on the ground that having commit-

ted one crime, the depravity it exhibits makes it more likely he would commit another. This does not mean, however, that relevant evidence must be excluded because it tends to show that the defendant has committed other crimes. The defendant is charged with a certain offense. The state may not convict him by proof that he has committed other offenses than the one for which he is being tried; but it has the right to prove that he has committed the offense charged. And in making such proof, "it is competent for the prosecution to put in evidence all relevant facts and circumstances which tend to establish any of the constitutive elements of the crime of which the defendant is accused in the case on trial, even though such facts and circumstances tend to prove that the defendant has committed other crimes." 8 R. C. L. p. 199. See also 22 R. C. L. p. 1204.

In State v. Gummer, 51 N. D. 445, 200 N. W. 32, this court said:

"It is settled law that the proof of the crime with which the defendant is charged is in no way restricted by the fact that evidence to establish some of the attendant facts will involve proof that the defendant on another occasion committed a wrong or a public offense; that is, if evidence of prior acts is relevant as to some element of the crime in question, it is none the less admissible because of the acts being prohibited by law.

"Wigmore, in considering whether facts relevant for some other purpose should be rejected because they would be inadmissible if offered to show a bad character, says (Wigmore, Ev. 2d ed. § 216):
'. . . If there is any other material or evidential proposition, for which it is relevant, and if it is offered for that purpose, it is receivable, and its quality as misconduct or crime does not stand in the way. The persistency of this fallacy, and its lack of foundation in law make it worth while to exhibit fully, from the utterances of the judges, their constant repudiation of the notion that the criminality of the conduct offered for some relevant purpose is any objection to its reception.'

"He then quotes, among others, the following expressions:

"Johnson, J., in People v. Wood, 3 Park Crim. Rep. 681:

"The proper inquiry, when the circumstance is offered, is, Does it fairly tend to raise an inference in favor of the existence of the fact proposed to be proved? If it does, it is admissible, whether such fact or circumstance be innocent or criminal in its character. It does not

lic with the prisoner to object that the fact proposed as a circumstance is so heinous in its nature, and so prejudicial to his character, that it shall not be used as evidence against him if it bears upon the fact in issue. The atrocity of the act cannot be used as a shield under such circumstances, or as a bar to its legitimate use by the prosecution. If it could, many criminals might escape just and merited punishment solely by means of their hardened and depraved natures.'

"Cushing, Ch. J., in State v. Lapage, 57 N. H. 288, 24 Am. Rep. 69, 2 Am. Crim. Rep. 506.

"I think we may assume, in the outset, that it is not the quality of an action, as good or bad, as unlawful or lawful, as criminal or otherwise, which is to determine its relevancy. I take it to be generally true, that any act of the prisoner may be put in evidence against him, provided it has any logical and legal tendency to prove any matter which is in issue between him and the state, notwithstanding it might have an indirect bearing which in strictness it ought not to have, upon some other matter in issue.'

"Brewer, J., in State v. Adams, 20 Kan. 319:

"Whatever testimony tends directly to show the defendant guilty of the crime charged, is competent, although it also tends to show him guilty of another and distinct offense. . . . A party cannot, by multiplying his crimes, diminish the volume of competent testimony against him.'

"Allen, J., in Com. v. Robinson, 146 Mass. 571, 16 N. E. 452:

"Such preliminary acts are not competent because they are criminal, but because they are relevant to the issue on trial; and the fact that they are criminal does not render them irrelevant. Suppose, for further example, one is charged with breaking a bank, and there is evidence that he had made preliminary examinations from a neighboring room; the fact that his occupation of such room was accomplished by a criminal breaking and entering would not render the evidence incompetent."

It seems too clear for controversy that the testimony of the prosecutrix as regards her relationship with the defendant, and his course of conduct toward her during the time covered by her testimony was both competent and relevant. And such is the rule announced by the

authorities. Underhill, Crim. Ev. 3d ed. § 156; 22 R. C: L. p. 1205; 33 Cyc. 1483.

· Ruling Case Law (22 R. C. L. p. 1205) says: "The doctrine must now be considered as fairly well settled by the weight of authority that in prosecutions for rape upon one under the age of consent, acts of sexual intercourse between the parties prior to the act charged in the indictment may be given in evidence as tending to sustain the principal charge, by showing the relation and intimacy of the parties, their disposition and antecedent conduct towards each other, and as corroborative of the testimony of the prosecutrix touching the particular act relied upon for a conviction."

We are also agreed that no error was committed in overruling the motion made before the commencement of the trial that the state be required to elect which specific act of intercourse it would rely upon for a conviction. State v. Schueller, 120 Minn. 26, 138 N. W. 937; State v. Roby, 128 Minn. 187, 150 N. W. 793, Ann. Cas. 1915D, 360; State v. Willett, 78 Vt. 157, 62 Atl. 48. At the time this motion was made, no evidence had been introduced. At the close of the state's case the court required the state to make an election. The election was made, and in its instructions to the jury the court said: "The state has elected to rely for a conviction upon the act of intercourse which the state claims was perpetrated on the 22nd of April, 1921. Evidence of other acts of intercourse was admitted in the case for the purpose only of tending to corroborate the testimony upon the part of the State as to such act of sexual intercourse on the 22nd day of April, 1921. . . . If you do not find beyond a reasonable doubt that the defendant did commit an act of sexual intercourse with the said Lillian Sibley on the 22nd day of April, 1921, you will find the defendant not guilty. Unless you find from the evidence beyond a reasonable doubt that the defendant did actually have sexual intercourse on the 22nd day of April, 1921, with Lillian Sibley, then you must under your oaths find the defendant not guilty." These instructions were eminently fair to the defendant. Whether they announced a rule more favorable to the defendant than he was entitled to, we need not consider.

(6) It is next contended that the trial court should have given specific instructions for the guidance of the jury in considering and

weighing the evidence relating to the alleged confession; and that the failure to so do constitutes reversible error. The contention is untenable. It is not claimed that the jury was misdirected. The sole complaint is that there was no direction at all. It is admitted that no request was made for instruction. The rule is well settled that mere "failure to instruct the jury on a particular phase of the evidence cannot be urged as prejudicial error, in the absence of a request so to do." State v. Haynes, 7 N. D. 352, 75 N. W. 267; State v. Rosencrans, 9 N. D. 163, 82 N. W. 422; State v. Glass, 29 N. D. 620, 151 N. W. 229.

(7) It is also asserted that the testimony of the prosecutrix is so unsatisfactory that the conviction ought to be set aside. A sufficient answer to this contention is that, in our opinion, the evidence is not only sufficient to sustain the verdict; but is of such character as to leave no doubt as to the correctness of the verdict.

The judgment and order appealed from are affirmed.

BURKE, JOHNSON, NUESSLE, and BIRDZELL, JJ., concur.