**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Richard D. KALOUSTIAN, Defendant and Appellant.**

**Cr. No. 458.**

Supreme Court of North Dakota.

Dec. 4, 1973.

Daniel E. Buchanan, Asst. State's Atty., Jamestown, for plaintiff and appellee State of North Dakota.

Bruce C. Britton, Jamestown, for defendant and appellant.

VOGEL, Judge.

This is an appeal from a conviction in the county court of increased jurisdiction of Stutsman County, North Dakota, on a charge of driving while under the influence of an intoxicating beverage, in violation of Section 39–08–01, N.D.C.C., which reads, in part, as follows:

"1. No person shall drive or be in actual physical control of any vehicle upon a highway in this state if:

"a. . . .

"b. He is under the influence of intoxicating liquor.

. . . . . . ."

The question to be decided is what probative effect, if any, is to be given to a blood-alcohol test taken more than 1½ hours after the defendant last drove a vehicle, when he claims to have been drinking after the driving and before the test.

The defendant was found guilty by the court after a trial without a jury. He was represented by the public defender. Upon conviction, his sentence was fixed as a fine of $100 and costs of $50. This appeal followed.

The sole question before us is the sufficiency of the evidence to convict. There is little or no dispute as to the admissibility of the evidence or as to what the facts are.

On March 27, 1973, at approximately 4:30 p. m., North Dakota Highway Patrol Officer Scott received word of an accident 2½ miles north of Jamestown on State Highway 281. He proceeded to the scene, arriving at 4:48 p. m., and found an unoccupied car in a water-filled ditch, at the end of a 308-foot skidmark. A crossroad intersected the highway at a point about 38 feet from the end of the skidmark. The car in the ditch had rolled over and was extensively damaged.

There were no eyewitnesses to the accident. Two witnesses testified to seeing a person leave the scene on foot, but neither one identified that person as the defendant or testified to any conduct on the part of that person indicative of his being under the influence of alcoholic beverages. No one testified that the defendant drank any alcoholic liquor before the accident.

Officer Scott traced the ownership of the vehicle to the defendant and found him at home in Jamestown at approximately 6 p. m. Thus there was an interval of approximately 1½ hours, or more, between the occurrence of the accident and the first testimony as to the mental and physical state of the defendant. The officer testified that the defendant, at 6 p. m., was, in his opinion, under the influence of alcohol, and that he had cuts and was bleeding and his clothes were wet. The officer took him to a local hospital, where a blood sample was taken. The time of taking the blood sample is not fixed, but it obviously was more than 1½ hours after the accident, since the call to the officer was at 4:30 p. m., his first contact with the defendant was at his home at 6 p. m., and he thereafter drove the defendant to the hospital where the blood sample was taken.

The analysis of the blood sample showed a blood-alcohol content of 0.12 per cent. The parties stipulated that the "results of the test will be admitted into evidence to show that at the time the test was taken the blood alcohol percentage was 0.12% by weight, but this is only for the evidence that it was this percent when in fact the test was taken and not at any other time."

The defendant testified that he had a head injury as a result of the accident and remembers little of the details of it, that he walked part way home and had a ride part way, and that he began drinking whiskey when he got home because he was upset and his car was smashed. He said he was home an hour or so before Officer Scott came.

He testified that the accident occurred as he attempted to pass a vehicle ahead of his on Highway 281; that the driver of the first vehicle suddenly, and without using his signal lights, turned to the left in front of him toward the approach to the crossroad; and that the defendant applied his brakes in order to avoid a collision but lost control of his car and it went into the ditch and rolled over. There is no evidence to the contrary, nor do we find his testimony contradictory or impeached.

The defendant claims the evidence is insufficient for a conviction. The question, then, is whether, under the circumstances we have outlined, and giving the decision of the trial judge the full weight to which it is entitled, the State has proved the commission of a crime beyond a reasonable doubt where it shows merely that a defendant was driving a vehicle at a certain time and that he was under the influence of intoxicating liquor at a different time, 1½ hours later.

█ While the evidence might support a conviction of leaving the scene of an accident without reporting it or of speeding, these are not offenses charged against the defendant. To prove the charge of driving while under the influence of intoxicating liquor, the State must establish both the driving, which it may have proved inferentially in its direct case, and which was admitted by the defendant after his motion for dismissal was denied, and that the defendant was under the influence of alcoholic beverages while driving the automobile.

The circumstantial evidence, including the skidmark and the fact that the defendant left the scene on foot, is no more consistent with guilt than it is with innocence.

In State v. Miller, 202 N.W.2d 673 (N. D.1972); State v. Champagne, 198 N.W. 2d 218 (N.D.1972), and State v. Carroll, 123 N.W.2d 659 (N.D.1963), we pointed out that the rule as to circumstantial evidence, at the trial level, is that such evi-

dence must be conclusive and must exclude every reasonable hypothesis of innocence, but at the appellate level we do not substitute our judgment for that of the jury or trial court where the evidence is conflicting, if one of the conflicting inferences reasonably tends to prove guilt and fairly warrants a conviction.

█ We adhere to the rule of the cases cited, but cannot find here either that there is a conflict in the evidence or that any inference of the driver's being under the influence of liquor can be drawn from the mere fact that an accident occurred. Nor can we find that such evidence fairly warrants conviction.

In *Miller, Champagne,* and *Carroll,* there was circumstantial evidence reasonably tending to establish the essential element of the crime; here, there is no evidence reasonably tending to establish the essential element of the driver's being under the influence of liquor at the time he was driving.

█ So we return to the question of whether bare proof of driving an automobile, followed by evidence of intoxication more than 1½ hours later, is sufficient to sustain a conviction of driving while under the influence of intoxicating liquor. We hold that it is not sufficient.

In State v. Glavkee, 138 N.W.2d 663 (N.D.1965), where a defendant attempted to bring in evidence as to his conduct some three hours after he allegedy was driving while intoxicated, we said, at page 667:

"Generally, evidence is inadmissible even though logically relevant, unless it has some probative value to establish a material fact involved in the lawsuit. Here, the main inquiry was as to the defendant's condition at approximately eight o'clock in the evening, at the time he was driving while allegedly under the influence of intoxicating liquor. What his condition was some three hours later, after he had been stopped, arrested, ex-

amined, and taken to jail, and finally released on bond and taken home, certainly would not be material to any issue in this case."

In State v. Rickel, 69 N.D. 329, 286 N.W. 895 (1939), we referred to the Iowa case of State v. Hamer, 223 Iowa 1129, 274 N. W. 885 (1937), which held that evidence showing that a motorist was intoxicated about a half hour after an accident gave rise to no presumption that his intoxicated condition was a continuation of his condition at the time of the accident, but held that the Iowa case was of no value because the defendant Rickel was shown by evidence to have been intoxicated at the time of the collision, that his movements were accounted for from that time until he later was seen drinking, and that he did not buy intoxicating liquor in the meantime and yet was intoxicated before buying the subsequent drinks. In addition, in the *Rickel* case, there was testimony that the defendant at the time of the collision was in possession of a bottle of whiskey and offered a drink to two witnesses. There was no such evidence here, nor was there any evidence that the defendant was intoxicated at the time he was driving the vehicle.

State v. Creighton, 201 N.W.2d 471 (Iowa 1972), is the latest in a long line of cases from Iowa, cited therein, holding that evidence that a defendant was under the influence of alcoholic beverages at the time of his arrest, without a showing of more, will not support a finding that he was in that condition when driving a motor vehicle at some earlier time.

We have taken notice that standard charts of the effect of alcohol upon a human being show that a person drinking whiskey can, within a period of $1\frac{1}{2}$ hours, attain a blood-alcohol concentration of 0.12 per cent. See Erwin, Defense of Drunk Driving Cases, 3d Ed., Sec. 15.03.

There is no sufficient evidence that the defendant was under the influence of alcohol at the time he was driving.

Reversed.

ERICKSTAD, C. J., and TEIGEN, KNUDSON and PAULSON, JJ., concur.